**Barry VITOW, Appellant**

v.

**Jeanne R. ROBINSON, Herman E. Robinson, Philip E. Hughes, Jr., and Fox Park Corporation, Appellees**

Superior Court of Pennsylvania.

Argued Feb. 4, 2003.
Filed May 1, 2003.

---

Daniel J. Dugan, Philadelphia, for appellant.

Marc H. Jaffe, Rosemont, for appellees.

Before: ORIE MELVIN, BOWES and BECK, JJ.

BOWES, J.:

¶ 1 Barry Vitow appeals the April 29, 2002 order granting summary judgment to Appellees, Jeanne R. Robinson, Herman E. Robinson, Philip E. Hughes, Jr., and Fox Park Corporation ("Fox Corporation"). We affirm.

¶ 2 On February 17, 1999, Appellant instituted this action against Appellees. Appellant is a former employee of Fox Corporation, where he worked from 1986 to 1998. Fox Corporation was owned by ten Fox Park Trusts, which were created by Mr. Robinson for the benefit of his daughters and grandchildren. Appellant is married to Mr. and Mrs. Robinson's daughter, Nina Vitow. The two trustees of the Fox Park Trusts were Mrs. Robinson and Mr. Hughes. Mrs. Robinson was the current president of Fox Corporation.

¶ 3 In the complaint, Appellant alleged the following. In June 1998, Mrs. Robinson and Mr. Hughes, "in return for valuable consideration," agreed to a severance package with Appellant if he ever left his employment with Fox Corporation. Complaint, 2/17/99, at ¶ 7. The severance agreement was memorialized in a letter, which was addressed to Appellant's wife and signed by Mrs. Robinson and Mr. Hughes. The letter reads as follows.

Dear Nina:

At your request, the trustees have agreed to give Barry Vitow a severance package as follows;  ·

In the event Barry Vitow leaves the employ of Fox Park Corporation for any reason, he shall be entitled to his normal salary and health benefits for a period of one year, commencing with the date employment ends.

Letter, 6/16/98, at 1; Exhibit A to Complaint. Soon after this letter was sent, Mr. Robinson assumed control of Fox Corporation. Mrs. Robinson then terminated Appellant's employment with Fox Corporation on December 15, 1998. Appellees did not honor the terms of the severance agreement. Appellant alleged a cause of action against Fox Corporation for breach of contract and violation of the Wage Pay-

ment and Collection Law, 43 Pa.C.S. §§ 260.1, *et seq.* As to Mrs. Robinson and Mr. Hughes, Appellant alleged a violation of the Wage Payment and Collection Law. Finally, Appellant accused Mr. Robinson of intentional interference with contractual relations by interfering with payment under the severance package.

¶ 4 Appellees filed an answer and new matter. The answer denied that the severance letter was a valid contract in that it was not supported by consideration. The following allegations were raised as new matter. Appellant's wife, Nina Vitow, was the co-trustee of a trust for the benefit of her sister, Elissa R. Segal. In summer 1998, the only asset of this trust was a portion of the ownership of Robinson Alarm Company ("Robinson Alarm"), which was a family-owned business. Mr. Robinson was the president of Robinson Alarm. That summer, the family decided to sell Robinson Alarm, and Mrs. Vitow's approval was necessary in order to complete the sale because the buyer wanted to purchase all of the outstanding stock of Robinson Alarm.

¶ 5 Mrs. Vitow told the family that she would withhold approval of the sale unless she received a guarantee that Appellant would receive a one-year severance agreement from Fox Corporation. "The officers of Fox [Corporation] agreed to Nina Vitow's demand in order to consummate the sale of Robinson Alarm Company, and for no other reason. The severance agreement was thus extorted and unsupported by any consideration," making it void as against public policy. Answer and New Matter, 3/12/99, at ¶ 38. In addition, Appellees asserted that Appellant was estopped from bringing this action due to his actions and those of his wife.

¶ 6 In response, Appellant denied both that his wife's approval had been needed to consummate the sale of Robinson Alarm and that she had withheld approval in order to extort the severance agreement. The case proceeded to discovery.

¶ 7 On September 26, 2002, Appellees moved for summary judgment. That motion offers more details regarding the related family trusts. In addition to the ten Fox Park Trusts created by Mr. Robinson for the benefit of his daughters and grandchildren, Mr. Robinson established other trusts, called the HARJEFS Trusts, for the benefit of his daughters and grandchildren. Appellant's wife, Mrs. Vitow, was the trustee of some of the HARJEFS Trusts, which were the majority shareholders of Robinson Alarm. Verifications attached to the summary judgment motion establish that Mrs. Vitow indeed was a trustee of the HARJEFS Trusts.

¶ 8 In 1998, negotiations occurred among Tyco International and the shareholders of Robinson Alarm for a sale of Robinson Alarm stock. The sale was worth approximately fifteen million dollars. Mrs. Vitow was asked to sign the proposed sale of the Robinson Alarm stock. Mrs. Vitow admitted at her deposition, a copy of which is included in the certified record, that she refused to sign the agreement with Tyco on behalf of the HARJEFS Trusts unless she received a severance pay package for Appellant. Deposition of Nina Vitow, 2/26/01, at 93–94, 101–02. She further admitted that neither Mrs. Robinson nor Mr. Hughes would have agreed to the severance agreement unless Mrs. Vitow had refused to sign the Tyco purchase agreement regarding the Robinson Alarm stock. *Id.* at 106–07.

¶ 9 In the motion for summary judgment, Appellees observed that Appellant had failed to make any allegations regarding a cause of action for either promissory estoppel or detrimental reliance. Appellees moved for summary judgment on the contract claims for the following reasons.

The severance agreement was unsupported by consideration since: 1) Fox Corporation had no relationship to the Tyco sale and had nothing to gain from it; 2) Fox Corporation no longer wanted to employ Mr. Vitow in 1998, which Mr. Vitow knew when the severance agreement was obtained; 3) Mr. Vitow admitted at his deposition that he neither paid for nor relinquished anything in return for the severance letter, Deposition of Barry Vitow, 1/30/01, at 32; and 4) Mrs. Vitow also admitted that she had paid nothing and relinquished nothing in exchange for the letter. Deposition of Nina Vitow, 2/26/01, at 107.

¶ 10 Appellant filed a cross-motion for summary judgment alleging that Appellees admitted that they failed to make payment under the severance agreement and that consideration for the agreement was supplied by his continued employment at Fox Corporation.

¶ 11 On April 29, 2002, the trial court granted Appellees' motion for summary judgment and denied Appellant's motion. The trial court concluded that when the depositions of the Vitows were examined, it became clear that there was no consideration present for the severance agreement. It noted that any contract was between Mrs. Vitow and Fox Corporation since the agreement admittedly was procured only because Mrs. Vitow refused to sign the Tyco sales agreement unless Fox Corporation offered the severance agreement. The court noted that in light of the relevant admissions, the agreement to pay "had nothing to do with Barry Vitow's employment relationship." Trial Court Opinion, 4/29/02, at 3. The court concluded that Appellant's continued employment at Fox Corporation could not supply the missing consideration because his performance was neither requested nor bargained for. This appeal followed.

¶ 12 On appeal, Appellant not only demands reversal of summary judgment in favor of Appellees but also suggests that he should have been granted summary judgment because Appellees admittedly failed to pay in accordance with the agreement. Since we conclude that the trial court correctly determined that the severance package was not supported by consideration, we deny Appellant's request for summary judgment in his favor.

¶ 13 We examine the grant of summary judgment under the following standards:

This court's scope of review is plenary when reviewing the propriety of a trial court's entry of summary judgment. Summary judgment is appropriate where there is no genuine issue of any essential fact and the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1035.2(1). In considering the motion, the trial court must examine the record in the light most favorable to the non-moving party, resolving all doubts against the moving party, who bears the burden of proving there is no genuine issue of material fact. An appellate court will reverse an order granting summary judgment only where there has been an error of law or clear abuse of discretion.

*Al's Cafe, Inc. v. Sanders Insurance Agency*, 820 A.2d 745 (Pa.Super.2003) (citations omitted).

¶ 14 Restatement (Second) of Contracts § 71 sets forth the requirement of consideration in order to render a promise enforceable:[1]

---

**1.** We note that Appellant does not contend that this is a type of contract that does not require consideration.

§ 71. Requirement of Exchange; Types of Exchange

(1) To constitute consideration, a performance or a return promise must be bargained for.

(2) A performance or return promise is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise.

(3) The performance may consist of

(a) an act other than a promise, or

(b) a forbearance, or

(c) the creation, modification, or destruction of a legal relationship.

(4) The performance or return promise may be given to the promisor or to some other person. It may be given by the promisee or by some other person.

¶ 15 Similarly, the noted Professor John E. Murray, Jr., wrote:

The classic description of the legal value element of consideration is found in *Currie v. Misa*, [L.R. 10 Ex. 153, 162 (1875)] where the Court of Exchequer stated, "A valuable consideration, in the sense of the law, may consist either in some right, interest, profit or benefit accruing to the one party, or some forbearance, detriment, loss of responsibility, given, suffered, or undertaken by the other."

John Edward Murray, Jr. *Murray on Contracts* § 56, 205 (3rd Edition 1990). This definition has been adopted in Pennsylvania, and as we have stated, "Consideration confers a benefit upon the promisor or causes a detriment to the promisee." *Eighth North–Val, Inc. v. Parkinson*, 773 A.2d 1248, 1253 (Pa.Super.2001).

¶ 16 It is clear that in the present case, consideration is not present. The promisor in this case, Fox Corporation, did not seek the performance of Appellant. Thus, it could not have received a benefit from a performance that it did not seek. On the other hand, Appellant, by his own admission, did not perform any additional duties or give anything in return, in exchange for the promise. There was no benefit to the promisor because the promisor did not seek or receive a benefit from the performance of Appellant, and Appellant suffered no detriment in exchange for the promise. Thus, consideration is lacking.

¶ 17 Indeed, Appellant does not even level a challenge to the key fact in this case, which is that Fox Corporation did not execute this agreement to obtain Appellant's continued performance; rather it sought Mrs. Vitow's signature, as fiduciary, on the sale of stock that benefited the beneficiary of the trust to which she was fiduciary. Instead, he insists that this fact is irrelevant. We disagree. This factual situation renders other contractual principles applicable in this case and actually reinforces our decision. Restatement (Second) of Contracts § 73 indicates, "Performance of a legal duty owed to a promisor which is neither doubtful nor the subject of honest dispute is not consideration...." Comment b states that the section could apply to a duty owed by a fiduciary. Thus, the fact that the consideration supplied by this contract consisted of Mrs. Vitow's promise to perform a duty she was required to perform by her fiduciary obligations further compels the conclusion that this agreement should not be enforced by this Court.

¶ 18 The following fiduciary duty was breached in this case. A trustee owes a duty to act in the interest of the beneficiaries in the administration of a trust. This duty has been referred to as "[p]erhaps the most fundamental duty." The trustee "must display throughout the administration of the trust complete loyalty

to the interests of the beneficiary and must exclude all selfish interest and all consideration of the interests of third persons." **Bogert, Trusts & Trustees** § 543, at 217 (2nd ed.1993). This required allegiance is also mandated by Restatement (Second) of Trusts § 170, Duty of Loyalty, which states, "(1) The trustee is under a duty to the beneficiary to administer the trust solely in the interest of the beneficiary." Particularly apt is comment a, which explains that a trustee is under "a duty not to profit at the expense of the beneficiary. . . ."

¶ 19 In the present case, Mrs. Vitow violated her most fundamental fiduciary duty by acting in the interest of herself and her husband rather than the interest of the beneficiary of her trust. She profited by potentially jeopardizing the beneficiary. We simply cannot enforce a contract that was procured in such a manner.

¶ 20 In light of the facts of this case, we readily distinguish the authority relied upon by Appellant. At pages sixteen through eighteen of his brief, Appellant cites to numerous cases involving an offer of a fringe benefit by an employer to an employee. Under the sound reasoning involved in those cases, courts of various jurisdictions have employed the following analysis. When an employer offers a fringe benefit to an employee to induce that employee to become or remain employed, the employee accepts the offer by beginning or continuing his employment with the employer, and an enforceable contract for payment of the benefit is created once the employee performs as outlined in the benefit offer. Appellant attempts to equate his case with those cases, alleging that Fox Corporation's offer to provide him with a severance package was accepted when he continued his employment with that corporation.

¶ 21 To state the obvious, the significant factor in the cases relied upon by Appellant is that the employer **sought** the employment or continued employment of the employee to whom the benefit package was offered. Herein, Fox Corporation did not offer the severance package to induce further employment because it did not desire Appellant's further employment. Fox Corporation signed the severance package due to the refusal of Appellant's wife to execute the agreement to sell another corporation in breach of her fiduciary duty.

¶ 22 As noted, Appellant maintains that the reason Fox Corporation signed the agreement is immaterial to its enforceability. This position simply is untenable. If Fox Corporation had signed the agreement because it wanted Appellant to remain in its employ, then the severance contract would be enforceable. That lesson is the very one illustrated by the cases relied upon by Appellant. However, the record herein irrefutably establishes that Fox Corporation did not execute the document at issue for that reason. The severance package was offered solely to obtain the signature of Appellant's wife on an unrelated transaction.

¶ 23 In fact, Appellant's position is inherently contradictory. On the one hand, he relies upon cases that rest on the proposition that an employer's fringe benefit offer is accepted by performance because the goal of the offer was to obtain that performance. On the other hand, Appellant claims that the reason the severance offer was made herein is not relevant. In point of fact, the *why* of a contract is the touchstone of consideration. Fox Corporation received no benefit from this coerced offer. Thus, the trial court's conclusion that this severance offer is not a valid contract because it is not supported by consideration was fully supported by the

evidence and did not constitute an abuse of discretion or error of law.

¶ 24 Order affirmed.